# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:17-cv-00097-FDW

| | |
|---|---|
| JAY JUNIOR AIKEN, ) | |
| ) | |
|       Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| ) | |
| LINDA LEE, ) | |
|       Defendant. ) | |

**THIS MATTER** comes before the Court on the following Defendant Linda Lee's Motion for Summary Judgment [Doc. 38], Defendant Lee's Motion to Seal Document [Doc. 40], and Plaintiff's "Answer to Defendant's Motion for Summary Judgment by Plaintiff's Request for Motion for Summary Judgment" [Doc. 49].

## I. BACKGROUND

### A. Procedural Background

Pro se Plaintiff Jay Junior Aiken is a prisoner currently incarcerated at Ware State Prison in Waycross, Georgia. Plaintiff filed this action on April 3, 2017, pursuant to 42 U.S.C. § 1983, for events he alleges transpired while he was detained at Jackson County Detention Center ("Detention Center") in Sylva, North Carolina. Plaintiff named the following individuals as Defendants: (1) Linda Lee, identified as a nurse at the Detention Center; (2) Charlie LNU, identified as an officer at the Detention Center; (3) John Bucanon, identified as a Captain at the Detention Center; and (4) Chip L. Hall, identified as the Sheriff of Jackson County. [Doc. 1 at 3]. Plaintiff's claim against Defendant Lee for deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment survived initial review. [Doc. 10]. The Court

dismissed the other Defendants, finding Plaintiff failed to state cognizable claims against them. [Id. at 5-6].

On June 14, 2019, Defendant Lee moved for summary judgment. [Doc. 38]. In support of her motion, Defendant Lee filed a memorandum in support, an Affidavit, and Plaintiff's medical record, which Plaintiff also moved to seal. [Docs. 38, 40]. Defendant Lee seeks summary judgment on three grounds: (1) Defendant Lee was not properly served; (2) Defendant Lee was not deliberately indifferent to Plaintiff's serious medical needs; and (3) Defendant Lee is entitled to qualified immunity. [Doc. 38 at 2].

On July 2, 2019, this Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motions and of the manner in which evidence could be submitted to the Court. [Doc. 48]. The Plaintiff was specifically advised that if he had any evidence to offer to show that there is a genuine issue for trial, he must present it to the Court "in a form which would otherwise be admissible at trial, i.e., in the form of affidavits or unsworn declarations." The Court further advised that:

> An affidavit is a written statement under oath; that is, a statement prepared in writing and sworn before a notary public. An unsworn statement, made and signed under the penalty of perjury, may also be submitted. Affidavits or statements must be presented by Plaintiff to this Court no later than fourteen (14) days from the date of this Order and must be filed in duplicate.

[Id.]. The Plaintiff filed an "Answer to Defendant's Motion for Summary Judgment" [Doc. 49] and an Affidavit [Doc. 51]. Defendant Lee, in turn, filed a reply. [Doc. 50].

This matter is now ripe for disposition.

2

### B. Factual Background

#### 1. Defendant's Forecast of Evidence

In support of Defendant Lee's motion for summary judgment, she submits her Affidavit and Plaintiff's medical record from Jackson County Detention Center. [Docs. 39-1: Lee Affidavit, 39-2: Medical Record]. This evidence shows as follows:

Defendant Lee worked for Transform Health during the relevant times. [Doc. 39-1 at ¶ 3]. Transform Health contracted with the Detention Center to provide medical care to inmates. [Id.]. Defendant Lee was never served with Summons or Complaint in this lawsuit. [Id. at ¶ 5]. Defendant Lee recalls often seeing the Plaintiff in the Detention Center "because he often caused trouble," she only provided medical care to Plaintiff on one occasion, which was for Plaintiff's complaint of wrist pain. [Id. at ¶ 6]. Defendant Lee never provided medical treatment to Plaintiff related to his heart or for his seizures. [Id. at ¶ 8]. Defendant Lee worked for Transform Health until July 29, 2016, and is now a private duty nurse in Waynesville, North Carolina. [Id. at ¶ 3].

Plaintiff's medical record shows that he was given a new patient screening by Vickie Hoxit, RN, on March 19, 2016, on his transfer to the Detention Center. [Doc. 39-2 at 2]. On March 28, 2016, Nurse Noxit was called to check on Plaintiff secondary to his complaints of chest pain, profuse sweating, and respiratory difficulties. Plaintiff was curled up in a ball when Nurse Hoxit arrived and Plaintiff believed he was having a "heart attack." [Id. at 3]. Nurse Hoxit examined and treated the Plaintiff in consultation with Colby Dodd, PA ("PA Dodd"). Medication was administered and apple juice provided. Plaintiff's chest pain ceased. An order was entered for transport of Plaintiff to the hospital on any further complaints of chest pain. [Id.]. Nurse Hoxit examined Plaintiff the next day in follow up to his chest pain the night before, which he reported was "pretty much gone today." [Id. at 4].

On April 25, 2016, Plaintiff was seen by PA Dodd in follow up to a recent visit to Harris Regional Hospital emergency department for seizure activity. [Doc. 39-2 at 5]. Plaintiff had been prescribed two different medications to manage Plaintiff's seizures. Plaintiff reported that he had been vomiting up his medication because he had been "severely nauseous." PA Dodd reported, however, that the correctional officers and nurses had reported hearing Plaintiff gagging himself. [Id.]. There were no complaints related to Plaintiff's heart at this time. On May 6, 2017, PA Dodd noted Plaintiff's ammonia level was high, which it appears to have been related to his seizure activity. [Id. at 6]. On May 10, 2016, Plaintiff was seen by Nurse Hoxit for complaints of continued seizures and "feeling poorly." [Id. at 7]. The only "ongoing medical problem" listed in this record is Plaintiff's seizures. [Id.].

On June 24, 2016, a nurse, Laura Busbin, LPN, was called to Plaintiff's dorm for concerns related to Plaintiff's seizure activity. On arriving at Plaintiff's dorm, Nurse Busbin observed Plaintiff lying on the floor, but saw no seizure activity. Plaintiffs dorm-mate reported Plaintiff had had two seizures. After being transported to medical and examined by Nurse Busbin, Plaintiff was able to ambulate back to his dorm without assistance. Nurse Busbin noted that Plaintiff was "laughing and joking upon exiting medical." [Id. at 8].

On June 28, 2016, Plaintiff was seen again by Nurse Busbin because he was refusing his medications, including his seizure medications. Nurse Busbin noted that Plaintiff was "still very delusional, thinking an Officer has been beating him up and that this nurse is poisoning him." [Doc. 39-2 at 9]. Plaintiff was brought to the booking unit for better observation and put on 15-minute checks. PA Dodd was notified and advised the officers and Nurse Busbin to continue to monitor Plaintiff. [Id.].

On June 30, 2016, Plaintiff was seen by PA Dodd for his continued refusal to take his

medications. PA Dodd noted that Plaintiff has a history of "refusing medications in hopes of inducing seizures and being sent to the ED for care." [Doc. 39-2 at 10]. PA Dodd continued, "[c]urrently, I feel unsafe managing his care at Jackson county detention facility with him refusing his medicine. We have continually educated Mr Aikens on the risks of refusing his medications, including permanent neurological damage or death. He states understanding and continues to refuse. I recommend he be transferred to Safe Keeping for continuous monitoring for seizure activity and further management of his care." [Id.].

On July 1, 2016, Plaintiff was seen by Defendant Lee for pain and discomfort of his right wrist. [Doc. 39-2 at 11]. This is the only encounter with Defendant Lee during Plaintiff's detention at the Detention Center. [See Doc. 39-2].

On July 4, 2016, Plaintiff was seen by PA Dodd for a "pseudoseizure." [Doc. 39-2 at 12]. PA Dodd reported, in pertinent part, as follows:

> [Plaintiff] is currently refusing his [seizure medication] on the basis that he can not [*sic*] drink water [due to a] chlorine allergy. We have offered him multiple other options and he continues to [ ] vomit the medications back up or attempt to discard the medications in the toilet. Shortly after this, he will attempt to induce an actual or pseudoseizure and throw himself to the floor inducing actual physical harm. Apparently, per him and other CO's, this is an attempt to be sent to the ED. He visits with me today and denies these actions, but does state that he is allergic to water, to note, there is no documented medical allergy to chlorine, or H2O. Today he had a pseudoseizure after vomiting his medications, and apparently hit the back of his head on the ground of his cell.

[Id.]. No further records were provided in support of Defendant Lee's summary judgment motion, perhaps because Defendant Lee was no longer working at the Detention Center shortly after this recorded encounter and/or because Plaintiff was transferred. When Plaintiff filed his Complaint on April 3, 2017, he was housed at Central State Prison in Macon, Georgia. [See Doc. 1 at 3].

5

## 2. Plaintiff's Forecast of Evidence

In response to Defendant Lee's motion for summary judgment, Plaintiff has submitted his own Affidavit and documentation related to service on Defendant Lee. [Doc. 51: Aiken Affidavit; Doc. 49-1 at 1-7]. Plaintiff's evidence shows as follows:

On February 29, 2016, Plaintiff began his detention at the Detention Center, having been sent there "by [his] probation officer." After having been in the booking area for approximately one hour, Plaintiff suffered a "granmal" seizure and was rushed to Harris Regional Hospital. [Doc. 51 at 1]. Plaintiff was admitted to the hospital and remained there for four days. [Id.]. Plaintiff returned to the Detention Center on March 11, 2016. There, he was charged with communicating threats to two sergeants. Plaintiff does not recall ever having spoken with these officers. [Id. at 1-2].

On March 14, 2016, Plaintiff saw Nurse "Hexit" for "medical review." [Id. at 2]. On March 28, 2016, Plaintiff began to experience severe chest pains and was taken to the medical examination room with two officers. The EKG machine there did not work. [Id.]. A cold compress cloth was laid on Plaintiff's head and approximately two hours later he returned to his cell. This was Plaintiff's first heart attack at the Detention Center. Plaintiff suffered a second heart attack sometime in May or June of 2016, which was "not reported by nurse Linda Lee." [Id.]. Plaintiff recalls Defendant Lee telling him to "stop faking [his] chest pains." Plaintiff does not attest when or under what circumstances this alleged statement occurred. Plaintiff states that, "Alot [sic] of incidents on my incarceration at Jackson County Detention Center is [sic] not listed on the medical record but are on grievances electronically filed at the Detention Center."[1] [Id.].

On June 25, 2016, Plaintiff told Defendant Lee that he was again having chest pain.

---

[1] Plaintiff provides no grievances in opposition to Plaintiff's summary judgment motion and does not contend that any such documents were withheld from production in this matter.

Further, Plaintiff refused to take the medication Defendant Lee tried to give him because it was not Plaintiff's. Thereafter, Defendant Lee had Plaintiff moved backed to the booking area and "placed on a mat on the floor." Plaintiff never saw a neurologist or a cardiologist. [Id.]. Plaintiff explained to PA Dodd, at an unspecific time, Plaintiff's medical history of "chest pains, C.O.P.D., Ashma [*sic*], TB, Family History Heart Disease, P.T.S.D., Coland [*sic*] cancer, Hepatitis C, Dyslipidemia, and severe lower back surgery." [Id. at 3]. Plaintiff had to have open heart surgery at Coliseum Main Medical Center in Macon, Georgia, presumably after his detention at the Detention Center. [Id.]. Plaintiff attests that he "only also received a[n] inhaler from nurse Linda Lee which [was] Cruel and Unusual Treatment with Medical Indifference," although Plaintiff provides no context regarding the provision of this inhaler. [Id.].

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3.

7

The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III. DISCUSSION

To state a claim under 42 U.S.C. § 1983 based on an alleged lack of or inappropriate medical treatment, a plaintiff must show a "deliberate indifference to serious medical needs" of the inmate.[2] Estelle v. Gamble, 429 U.S. 97, 104 (1976). "Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001) (citations omitted). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the

---

[2] Because Plaintiff was a pre-trial detainee at all relevant times, the Fourteenth Amendment applies to his claim for deliberate indifference to serious medical needs. The analysis, however, remains the same. See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239 (1983); but see Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473, 2475 (2015) (holding that the test for excessive force claims brought by pretrial detainees under the Fourteenth Amendment differs from the test for excessive force claims brought by convicted prisoners under the Eighth Amendment). Therefore, Eighth Amendment cases are instructive in analyzing pre-trial detainees' claims of deliberate indifference.

8

conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

Allegations that might be sufficient to support negligence and medical malpractice claims do not, without more, rise to the level of a cognizable Section 1983 claim for a federal constitutional violation. Estelle, 429 U.S. at 106; Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it."). To be found liable for a constitutional violation, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994); Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). "[E]ven if a prison doctor is mistaken or negligent in his diagnosis or treatment, no constitutional issue is raised absent evidence of abuse, intentional mistreatment, or denial of medical attention." Stokes v. Hurdle, 393 F. Supp. 757, 762 (D. Md. 1975), aff'd, 535 F.2d 1250 (4th Cir. 1976). The constitutional right is to medical care. No right exists to the type or scope of care desired by the individual prisoner. Id. at 763. Therefore, a disagreement "between an inmate and a physician over the inmate's proper medical care [does] not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (dismissing the plaintiff's § 1983 claim against a defendant physician for allegedly discharging the plaintiff too early from a medical clinic, as such claim did not rise to the level of deliberate indifference but would, "at most, constitute a claim of medical malpractice").

Plaintiff has not raised a genuine issue for trial here. Namely, even taking Plaintiff's unsupported averments as true, the "record as a whole could not lead a rational trier of fact to find for the nonmoving party." Ricci, 129 S. Ct. at 2677. Plaintiff has failed to establish that Defendant Lee had the requisite state of mind to establish "deliberate indifference" under the law. Deliberate

9

indifference describes a state of mind more blameworthy than negligence, requiring (1) that a defendant have been personally aware of facts from which the inference could be drawn that Plaintiff would suffer a substantial risk of serious harm; and (2) that the defendant had actually drawn the inference and recognized the existence of such a risk. Farmer, 511 U.S. 825, 837 (1994). Further, a prison official is not liable if she knew the underlying facts but believed, even if unsoundly, that the risk to which the facts gave rise was insubstantial or nonexistent. Id. at 837.

Here, the Plaintiff's allegations fail to satisfy either of these elements as to Defendant Lee's state of mind. Defendant Lee attests and the medical record supports that she only provided medical care to Plaintiff one time while she worked at the Detention Center. [Doc. 38-1 at ¶ 6]. The care she provided on this occasion was for Plaintiff's complaint of wrist pain. [Id.]. Defendant Lee also attest and, again, the medical record supports that she never provided care to Plaintiff related to his heart or for his seizures. [Id. at ¶ 7]. The medical record plainly supports a single instance of care provided at the Detention Center by other providers potentially related to Plaintiff's heart, namely for chest pain, and many instances of care for Plaintiff's seizures and "pseudoseizures." [See Doc. 39-2 at 2-41].

Plaintiff, on the other hand, attests that Defendant Lee told him to "stop faking [his] chest pains" and that she did not report a heart attack that Plaintiff experienced "on the date of May or June not for sure exactly but was 2016." [Doc. 51 at 2]. Plaintiff points to no other evidence of this "heart attack" having occurred, what the supposed circumstances around it were, whether Defendant Lee was present while it occurred, or the circumstances under which Defendant Lee was otherwise made aware of it. Plaintiff also attests that he refused to take medication that Defendant Lee tried to administer to Plaintiff for chest pain because "the medication she had for [Plaintiff] was not [his]." [Id.]. Plaintiff also states that, since leaving the Detention Center, he

had to have open heart surgery, which was performed by Dr. Fady Wanna in Macon, Georgia. Plaintiff states that Dr. Wanna told the Plaintiff that Plaintiff "should have had the surgery earlier." [Id. at 3].

As such, Plaintiff has failed to forecast sufficient evidence that Defendant Lee actually drew an inference and recognized the existence of a "substantial risk of serious harm" to the Plaintiff. Further, no rational trier of fact could find for Plaintiff based on the record as a whole. Thus, Plaintiff's forecast of evidence is insufficient to raise a genuine issue of fact and Plaintiff's claim of deliberate indifference to his serious medical needs against Defendant Lee fails as a matter of law.

Defendant Lee also seeks summary judgment based on qualified immunity. Qualified immunity shields "government officials performing discretionary functions … from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Defendant Lee, therefore, is entitled to qualified immunity if either her conduct did not violate any constitutional rights, or the right was not clearly established. Pearson v. Callahan, 555 U.S. 223, 232 (2009). Here, Plaintiff has failed to forecast sufficient evidence that Defendant Lee's conduct violated any constitutional rights. As such, Defendant Lee is also entitled to qualified immunity.

In sum, Plaintiff has failed to raise a genuine issue of material fact for trial in this matter and the Court will grant summary judgment for Defendant Lee as a matter of law.[3]

Defendant Lee also moves to seal the Plaintiff's medical records that she filed in support

---

[3] Defendant Lee also argues that she is entitled to summary judgment because she was never properly served in this matter. [Doc. 38 at 2; Doc. 39 at 6-8]. Because there is some question as to whether Defendant Lee waived any defect in service, see Patterson v. Whitlock, 392 Fed. App'x 185 (4th Cir. 2010), and because Plaintiff fails to survive summary judgment in any event, the Court declines to further address that issue.

of her summary judgment motion, in accordance with Rule 5.2(d) of the Federal Rules of Civil Procedure and Rule 6.1 of the Local Rules Governing Civil Cases for the United States District Court for the Western District of North Carolina. [Doc. 40]. For grounds, counsel states that the medical records contain Plaintiff's confidential medical information. [Doc. 41 at 2].

Before sealing a court document, the Court must "(1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives." Ashcraft v. Conoco, Inc., 218 F.3d 288, 302 (4th Cir. 2000). In the present case, the public has been provided with adequate notice and an opportunity to object to the Defendant's motion. The Defendant filed her motion of June 14, 2019, and it has been accessible through the Court's electronic case filing system since that time. Further, the Defendant has demonstrated that the subject records contain sensitive information concerning the Plaintiff and that the public's right of access to such information is substantially outweighed by interests in protecting the details of such information. Finally, having considered less drastic alternatives to sealing the document, the Court concludes that sealing of the records is necessary to protect the Plaintiff's privacy interests.

Accordingly, the Court will grant Defendant's motion to seal and direct the Clerk to seal Plaintiff's medical records.

## IV. CONCLUSION

In sum, for the reasons stated herein, the Court grants Defendant Lee's motion for summary judgment motion, denies Plaintiff's motion for summary judgment, and grants Defendant Lee's motion to seal Plaintiff's medical records.

**IT IS, THEREFORE, ORDERED** that:

(1) Defendant Lee's Motion for Summary Judgment [Doc. 38] is **GRANTED**, and this action is dismissed with prejudice.

(2) Plaintiff's "Answer to Defendant's Motion for Summary Judgment by Plaintiff's Request for Summary Judgment" [Doc. 49] is **DENIED** in accordance with this Order.

(3) Defendant Lee's Motion to Seal [Doc. 40] is **GRANTED** and the Clerk is respectfully instructed to seal docket number 39-2 in this matter.

(4) The Clerk is respectfully instructed to terminate this action.

Signed: December 13, 2019

Frank D. Whitney
Chief United States District Judge